IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 8, 2008

## STATE OF TENNESSEE v. ROBERT LEE ADAMS, JR.

**Appeal from the Circuit Court for Tipton County**
**No. 5340     Joseph H. Walker, Judge**

---

**No. W2007-00880-CCA-R3-CD  - Filed May 22, 2008**

---

The Appellant, Robert Lee Adams, Jr., was convicted by a Tipton County jury of Class B felony possession of a Schedule II controlled substance and misdemeanor possession of a Schedule VI controlled substance. Following a sentencing hearing, the trial court sentenced Adams to fourteen years, as a Range II multiple offender, for Class B felony possession of cocaine and to eleven months and twenty-nine days for misdemeanor possession of marijuana. On appeal, Adams raises three issues for our review: (1) whether the trial court erred in denying Adams' motion to suppress evidence upon grounds that the pat-down search was not supported by a reasonable fear for officer safety; (2) whether the evidence was sufficient to support the conviction for felony possession of a Schedule II controlled substance with the intent to deliver; and (3) whether the court erred in allowing the State to question the TBI forensic agent regarding the average weight of cocaine tested in a typical cocaine prosecution case. Following review, the judgments of conviction is affirmed.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Frank Deslauriers, Covington, Tennessee, for the Appellant, Robert Lee Adams, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

#### Factual Background

On December 22, 2005, Deputy Brandon Williams of the Tipton County Sheriff's Department, while on routine patrol in Covington, observed a car parked inside a bay at the Ripley Car Wash. He also observed a truck parked beside the car. From the deputy's view, the car did not appear to have a license plate, and neither vehicle was "being washed." The deputy then observed Michael Means, "a known drug user," exit the truck and enter the back seat of the car. Means

remained in the car for only seconds and then exited. Williams, who suspected that he had witnessed a drug transaction, turned his patrol car around, but, "before [he] could get back, both vehicles took off." Williams observed the Appellant's vehicle and pursued it. From his position behind the vehicle, Williams could not see the "drive out tag in the back window, due to the tint and the crinkling of the tag." Williams activated his blue lights and observed the Appellant stop his vehicle at a stop sign at Union and East Liberty Streets. According to Williams, "[w]hen [the Appellant] stopped, he took back off, and he appeared to be stuffing something either in the side [door] of the car or down his pants." The Appellant proceeded to stop his vehicle a short distance later, and Williams approached the car. According to Williams, the Appellant was "nervous and didn't really want to answer [his] questions." A passenger was also in the vehicle.

Deputy Williams asked the Appellant for consent to search the vehicle, and the Appellant agreed. Based upon the Appellant's "nervousness and his movement in the vehicle before he was stopped," Williams conducted a pat-down search of the Appellant. During the pat-down, the deputy felt a "small bulge" in the Appellant's left pocket, which felt like "powder." Williams believed the substance to be cocaine. When he asked the Appellant what was in his pocket, the Appellant stated "money." Williams then retrieved several balls of a white powder substance and also discovered two bags of marijuana. At some point during this encounter, the Appellant stated to Williams, "well, you got me." When Williams asked the Appellant what was in the bags he had seized, the Appellant replied, "[c]ocaine and weed." Testing later determined that the substances were 3.7 grams of cocaine and 5 grams of marijuana. The value of the cocaine was approximately $400. No drug paraphernalia was found in the vehicle or on the Appellant's person.

On July 10, 2006, a Tipton County grand jury returned a two-count indictment charging the Appellant with possession of a Schedule II controlled substance, cocaine, over .5 grams, with intent to deliver, a Class B felony, and possession of marijuana, a Class A misdemeanor. The Appellant filed a motion to suppress, arguing that the pat-down search was illegal. After a hearing, the Appellant's motion to suppress was denied. Following a January 17, 2007 jury trial, the Appellant was found guilty of the indicted charges. He was subsequently sentenced, as a multiple offender, to fourteen years for the Class B felony and to eleven months and twenty-nine days for the misdemeanor conviction. After the trial court denied his motion for new trial, the Appellant filed the instant timely appeal.

**Analysis**

On appeal, the Appellant has raised three issues for our review: (1) whether the court erred in denying the Appellant's motion to suppress; (2) whether the evidence is sufficient to support the felony drug conviction, specifically the element of intent to deliver; and (3) whether the court erred in allowing the testimony of the TBI forensic agent regarding the average weight of cocaine which she typically tests in a cocaine prosecution case.

**I. Motion to Suppress**

The Appellant contends that the trial court erred in failing to suppress the evidence, specifically the seized cocaine and marijuana, as well as his admissions, obtained as a result of the pat-down search. When a ruling on a motion to suppress is challenged, the trial court's findings of fact are presumed correct unless the evidence contained in the record preponderates against them. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of facts." *State v. Lawrence*, 154 S.W.3d 71, 75 (Tenn. 2005) (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). However, appellate review of a trial court's conclusions of law and application of law to facts on a motion to suppress evidence is *de novo*. *State v. Nicholson*, 188 S.W.3d 649, 656 (Tenn. 2006).

Both the state and federal constitutions protect individuals from unreasonable searches and seizures. U.S. CONST. amend. IV; Tenn. Const. Art I, § 7. Therefore, a search or seizure conducted without a warrant is presumed unreasonable, and any evidence discovered as a result of such a search is subject to suppression. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022 (1971); *State v. Bridges*, 963 S.W.2d 487, 490 (Tenn. 1997). However, the evidence will not be suppressed if the State proved that the warrantless search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *State v. Binnette*, 33 S.W.3d 215, 218 (Tenn. 2000) (quoting *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)).

One such exception is a brief investigatory stop by a law enforcement officer if the officer has a reasonable suspicion, based upon specific and articulable facts, that a person has either committed a criminal offense or is about to commit a criminal offense. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868 (1968); *Binnette*, 33 S.W.3d at 218. In evaluating whether a police officer has a reasonable suspicion, supported by specific and articulable facts, a court must consider the totality of the circumstances. *Binnette*, 33 S.W.3d at 218.

The Appellant does not contest the trial court's finding that reasonable suspicion for the initial traffic stop was established, and we agree that Williams had ample suspicion to initiate the stop of the Appellant's vehicle. Nor does the Appellant challenge Williams' search of his car, which the Appellant consented to. He challenges only the pat-down search conducted by Williams.

In *Terry*, the United States Supreme Court ruled as follows:

> We merely hold today that where a police officer . . . reasonably [] conclude[s] . . . that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous . . . and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for . . . safety, he is entitled for [] protection . . . to conduct a carefully limited search . . . to discover weapons . . . .

392 U.S. 1, 30, 88 S. Ct. 1868, 1884-85 (1968). Thus, the Fourth Amendment permits a protective frisk where a law enforcement officer has reasonable suspicion that the suspect is armed. *Id*. at 37, 88 S. Ct. at 1883; *Hughes v. State*, 588 S.W.2d 296, 304 (Tenn. 1979). A frisk has been upheld as

reasonable when the suspected crime might typically involve the use of a weapon. When, however, the likely crime does not involve a weapon, "other circumstances" must be present to justify a *Terry* frisk. *Sibron v. New York*, 392 U.S. 40, 74, 88 S. Ct. 1889 (1968) (Harlan, J., concurring)). "Other circumstances" include

> a characteristic bulge in the suspect's clothing; observation of an object in the pocket which might be a weapon; an otherwise inexplicable sudden movement toward a pocket or other place where a weapon could be concealed; an otherwise inexplicable failure to remove a hand from a pocket; backing away by the suspect under circumstances suggesting he was moving back to give himself time and space to draw a weapon; awareness that the suspect had previously been engaged in serious criminal conduct; awareness that the suspect had previously been armed; [and] discovery of a weapon in the suspect's possession . . . .

LaFave, *Search and Seizure*, § 9.5(a) (3d ed. 1996) (footnotes and citations omitted).

On appeal, the Appellant asserts that the pat-down search was illegal because it was conducted after the search of the car, during which nothing was found. According to his argument, it was unreasonable to conduct a pat-down search for officer safety after the investigation had essentially concluded. Thus, his entire argument is premised upon the fact that the pat-down search was conducted after the search of the car. According to the Appellant, the officer's investigation was basically complete at the time, and the pat down was done to discover evidence rather than as a safety precaution. He concedes that if the search had been conducted prior to the search of the car, it would have been justified by reasonable suspicion, as Williams testified it was conducted based upon the Appellant's nervous behavior and his having appeared to have stuffed something in his pants or in an interior area of the car prior to stopping. The State contends, however, that the pat-down search was in fact conducted prior to Williams' search of the car and was, thus, valid.

We note that Williams specifically testified at trial that the pat-down was conducted prior to the search of the car. In support of the Appellant's position that the pat-down was conducted subsequent to the search of the car, the Appellant directs our attention to the following response of the deputy during cross-examination at the suppression hearing:

> [Defense Counsel]: Okay. So if you searched the vehicle, it was <u>after you searched the vehicle</u>, you didn't find anything in the vehicle, then, correct?
>
> [Deputy]: No, sir.

(emphasis in Appellant's brief)

From the above testimony, the Appellant premises his entire argument that the pat-down search was conducted "after [the deputy] searched the vehicle." Our review of the deputy's testimony does not remotely lead us to this conclusion. Williams' reply to the ambiguous question

clearly appears to be in response to the question of whether anything was found in the search of the car, as opposed to the sequence of the searches. In denying the motion, the trial court found

> that it was a permissible pat-down, that the officer could feel something in the pat-down that he had reasonable suspicion to believe the [Appellant] was not telling the truth about, and the Court feels there was a justifiable basis for the continued intrusion by taking something out of the pocket.

The trial court heard the testimony given at the suppression hearing and was in the best position to resolve any conflicts, if any, in the evidence presented. We find nothing in the record to preponderate against the court's findings. As such, the pat-down search was not invalid, and, therefore, the drugs seized from the Appellant's pocket were properly seized pursuant to the so-called plain feel doctrine. *See State v. Bridges*, 963 S.W.2d 487, 493 (Tenn. 1997).

## II. Sufficiency of the Evidence

Next, the Appellant contends that the evidence is insufficient to support the felony conviction for possession of cocaine with intent to deliver. Specifically, he argues that the State failed to establish his intent to deliver cocaine. According to the Appellant, the only evidence of intent was the weight, or volume, of the cocaine possessed and that that proof alone is insufficient to support the inference that he possessed cocaine with the purpose of delivering.

In considering the issue of sufficiency of the evidence, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

As applicable to the present case, "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to . . . deliver the controlled substance," *see* T.C.A. § 39-17-417(a)(4) (2006), and cocaine is a Schedule II controlled substance, *see id.* § 39-17-408(b)(4) (2006). Tennessee Code Annotated section 39-17-419 (2006) permits an inference based on the amount of the controlled substance possessed by the accused, along with other facts surrounding the arrest, that the substance was possessed for the purpose of selling or otherwise dispensing. The Appellant, relying upon *State v. Long*, 45 S.W.3d 611 (Tenn. Crim. App. 2000), argues that the weight of the drugs possessed alone is insufficient evidence to establish the intent to deliver. As noted by the State, the Appellant's reliance upon *Long* is clearly misplaced as that case involved a conviction for first degree murder, not possession of drugs.

Regardless, the Appellant's argument must fail, as the evidence introduced, when viewed in the light most favorable to the State, was more than sufficient to support the inference that the Appellant intended to deliver the cocaine possessed. In addition to the amount of cocaine possessed, other evidence presented also supported the inference that the Appellant intended to deliver the drugs. The proof established that the Appellant rendezvoused with a known drug user inside a car wash bay, with the known drug user entering the Appellant's car and remaining for only seconds before exiting. Both vehicles then promptly left the area. The Appellant failed to stop initially when Deputy Williams activated his blue lights, and the Appellant was observed stuffing something inside his pants or in the side of the driver's door. The Appellant was found to be in possession of four individually packaged bags, identified as "four balls," inside his pants pockets, which contained 3.7 grams of cocaine. The street value of this cocaine was approximately $400, and the Appellant was found in possession of $80 in cash. Moreover, no drug paraphernalia was found which could be used to personally ingest the cocaine. This evidence amply supports the conviction.

## III. Testimony Regarding Mean Weight of Cocaine Tested

Finally, the Appellant contends that the trial court erred by allowing the prosecutor to question the TBI forensic agent, over defense objection, as to the average or "mean" weight of cocaine tested by the agent in a typical cocaine prosecution case. On appeal, the Appellant contends that the testimony was irrelevant. The challenged testimony is as follows:

> [State]: Do you have an opinion as to what the mean amount analyzed over those thousands of analyses of cocaine would be by the TBI lab?
>
> [Witness]: I would says it's approximately point one, point one grams, zero point one.
>
> [State]: And this was three point seven?
>
> [Witness]: That is correct.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 402. Even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403; *State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002). "In deciding these issues, the trial court must consider among other things, the questions of fact that the jury will have to consider in determining the accused's guilt as well as other evidence that has been introduced during the course of the trial." *State v. Williamson*, 919 S.W.2d 69, 78 (Tenn. Crim. App. 1995). A trial court's decision as to the relevance of evidence under Rule 402 will be reversed only upon a showing of abuse of discretion. *State v. Powers*, 101 S.W.3d 383, 395 (Tenn. 2003).

According to the Appellant, the testimony had only one purpose, that being to emphasize the amount of cocaine possessed by the Appellant, as opposed to the amount possessed in a typical cocaine prosecution. Specifically, he asserts that "[b]y allowing this testimony, the trial court was allowing an over-emphasis of the amount of drugs and this would mislead the jury regarding the importance of the amount of drug[s] and would divert the jury from the requirement that other factors must support the inference."

In response, the State argues that the testimony is relevant, because the prosecutor was required to prove that the Appellant intended to deliver or sell the cocaine. The State contends that showing that the Appellant possessed an amount greater than the average amount possessed was probative of that element of the crime. However, we cannot conclude that the challenged forensic testimony was relevant. Testimony with regard to the "mean" amount [of cocaine] analyzed" fails to reflect whether the amount was being analyzed in a felony or misdemeanor prosecution, the number of substances analyzed that ultimately result in acquittals or non-prosecutions, whether the amount being analyzed constitutes all or only a portion of the drugs seized, and numerous other variables which simply cannot be factored into a reliable or accurate response for the purpose offered. Moreover, it is fundamental that each case is dependent upon the facts and circumstances of the respective case and not upon a proven fact in another drug prosecution case. Nonetheless, we are confident that the error did not affect the jury's verdict or the resulting judgment. Tenn. R. App. P. 36(b). The expert witness' testimony on the issue arose from a single prosecution question followed by a not altogether discernible response. Furthermore, as noted *supra*, the weight of the cocaine was not the only evidence presented by the State to support the inference of an intent to deliver. Accordingly, the error was harmless.

**CONCLUSION**

Based upon the foregoing, the Appellant's conviction for possession of a Schedule II controlled substance, cocaine, with the intent to deliver, in an amount of .5 grams or more, is affirmed.

_____
DAVID G. HAYES, JUDGE

-7-